UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 12 B 11838 |
| | ) | Chapter 13 |
| SANDRA ARNOLD and | ) | Judge Donald R. Cassling |
| DONALD ARNOLD, | ) | |
| | ) | |
| Debtors. | ) | |

**MEMORANDUM OPINION**

The issue in this case is whether an unrecorded Illinois mortgage is "a claim secured only by a security interest in real property that is the debtor's principal residence" for purposes of 11 U.S.C. § 1322(b)(2), which prohibits a Chapter 13 plan from modifying the rights of a holder of such a claim.

It is undisputed that Bank of America, N.A. (the "Bank"), never recorded its mortgage on the principal residence of debtors Sandra and Donald Arnold (the "Debtors"). The parties also agree that under Illinois law: (1) the Bank may not enforce its unrecorded mortgage against creditors, including trade creditors, without actual prior knowledge of the Bank's mortgage, but (2) the Bank may enforce its note and unrecorded mortgage against the Debtors. The parties disagree as to the consequences of this state-law treatment of the Bank's position in determining whether the Bank's claim is protected against modification under § 1322(b)(2).

The Debtors take the position that the Bank's inability to enforce its unrecorded mortgage against creditors without actual prior notice of the mortgage is determinative and leaves the Bank without a "claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). As a result, the Debtors argue, their Chapter 13 plan of reorganization (the "Plan") appropriately treats the Bank's claim as unsecured. The Debtors also

argue that, because the Bank did not file proof of an unsecured claim prior to the claims bar date, its unsecured claim has been waived.

The Bank argues that its right to enforce its mortgage against the Debtors is all that matters in determining whether it has a "claim secured . . . by a security interest" in the Debtors' home, and that the mortgage's ineffectiveness against subsequent creditors should play no role in the analysis. *Id.* According to the Bank, the Debtors' Plan modifying the Bank's rights is therefore unconfirmable under § 1322(b)(2). The Bank also argues that, if the Court determines that it does not have a secured claim, its claim should still be allowed as an unsecured claim.

For the reasons that follow, the Court agrees with the Debtors that the Bank's claim is not "a claim secured . . . by a security interest" in the Debtors' property for purposes of the anti-modification provisions of § 1322(b)(2), but agrees with the Bank that it possesses an enforceable unsecured claim against the Debtors, notwithstanding its failure to have filed a proof of an unsecured claim.

## I. JURSIDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## II. BACKGROUND

The Debtors purchased their home in Carol Stream, Illinois, using funds loaned to them by the Bank. As part of the loan transaction, the Debtors executed both a note and a mortgage on the home in favor of the Bank. Unbeknown to the Debtors then and until after the time of filing of this case, the Bank never recorded that mortgage.

The Debtors filed a Chapter 13 voluntary petition on March 26, 2012, and filed their original plan shortly thereafter.[1] (Docket No. 12.) In that original plan the Debtors treated the Bank as a secured creditor, with post-petition monthly mortgage payments to be sent to it directly by the Debtors. (*Id.*) The original plan also provided for mortgage arrears to be disbursed to the Bank by the Chapter 13 trustee. (*Id.*)

On July 20, 2012, the Bank filed a motion to have the stay modified so that it could record its mortgage. (Docket Nos. 36 & 38.) The Court denied that motion. (Docket No. 55.) Learning for the first time that the Bank had failed to record its mortgage, the Debtors amended their Schedule A to reduce the amount of the secured claim on the Property to $0.00. (Docket No. 41.) At the same time, they reduced the stated value of the home from $160,000.00 to $125,000.00. (*Id.*) In addition, the Debtors then modified and filed the Plan on July 25, 2012, changing the treatment of the Bank's claim from secured to unsecured and eliminating any provision for payment of mortgage arrears. (Docket No. 49.)

In response, on August 1, 2012, the Bank filed an objection to confirmation of the Plan, arguing (1) that the Plan improperly treats its claim as unsecured, (2) that the Debtors' reduced valuation of the home is in error, so that the Plan does not meet the net liquidation test, and (3) that the Debtors failed to adequately justify the reduction in income on their Amended Schedule I.[2] (Docket No. 59.)

---

[1] Before the current Plan was filed, the original plan was modified several times: on April 24, 2012; May 14, 2012; May 15, 2012; and May 16, 2012. (Docket Nos. 19, 22, 23, & 24.)

[2] This opinion deals only with the first of these three objections; the remaining two will be addressed in a subsequent hearing. In addition to its objection to confirmation, on August 1, 2012, the Bank also filed an objection to the Debtors' exemptions on the basis that the Debtors are not entitled to their homestead exemption under 735 Ill. Comp. Stat. 5/12-901. (Docket No. 61.) The Bank states in support of its objection that on their original Schedule C the Debtors indicated they had no equity in the property and so did not claim a homestead exemption. (*Id.*) However, once they amended Schedule C, the Debtors claimed the full $30,000 homestead exemption. (*Id.*) The Bank contends that because of the mortgage, as between the Debtors and the Bank, they have waived their right to claim their homestead exemption with respect to the Bank's claim. (*Id.*)

3

The next day, on August 2, 2012, the Bank filed its proof of claim number 13-1 ("Claim No. 13-1") in the sum of $200,318.65 for a "Note and Mortgage dated February 14, 2009." (Claim No. 13-1.) Notwithstanding that it had already admitted that it had not recorded its mortgage, the Bank filed Claim No. 13-1 as a secured claim and stated that the basis for perfection of the mortgage was "recording with county recorder." (*Id.*) The Bank attached to Claim No. 13-1 a copy of the mortgage, a "mortgage proof of claim attachment," and an escrow analysis. (*Id.*)

Five days later, on August 7, 2012, the Bank amended its Claim No. 13-1 ("Claim No. 13-2"), keeping the secured claim in the same amount as listed on the original claim but leaving the section on the form for "basis for perfection" blank.[3] (Claim No. 13-2.) The Bank attached the same exhibits to the amended claim as were attached to the original. (*Id.*) Both the original and amended claims reflect an arrearage amount of $16,104.54. (Claim Nos. 13-1 & 13-2.)

On August 22, 2012, the Debtors objected to the Bank's Claim No. 13-2 on the basis that the Bank's mortgage was never recorded and therefore is not a secured debt. (Docket No. 68.) Upon request of the Court, both parties filed briefs in support of their respective positions, and the Court took the matter under advisement.

The Debtors' Plan cannot be confirmed if the Bank has a "claim secured only by a security interest in real property that is the debtor's principal residence" within the meaning of the anti-modification provision of § 1322(b)(2). Resolution of whether the Bank's claim is secured or unsecured requires resort to both the Bankruptcy Code and to Illinois law.

### III. APPLICABLE STANDARDS

Section 1322 of the Bankruptcy Code generally permits Chapter 13 debtors to "modify the rights of holders of *secured claims*," with one exception: The plan may not modify the rights

---

[3] The claims bar date was August 7, 2012.

4

of "a claim secured only by a *security interest* in real property that is the debtor's principal residence. . . ." 11 U.S.C. § 1322(b)(2) (emphasis added). The term "security interest" is defined by the Code to mean a "*lien* created by an agreement." 11 U.S.C. § 101(51) (emphasis added). In turn, the Code defines the term "lien" to mean a "*charge against or interest in property* to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37) (emphasis added); s*ee also In re Penrod*, 50 F.3d 459, 463 (7th Cir. 1995).

State law determines whether the parties have created a "lien" within the meaning of these Code definitions. *Bank of Am., N.A. v. Outboard Marine Corp. (In re Outboard Marine Corp.)*, 304 B.R. 844, 854 (Bankr. N.D. Ill. 2004). "Specifically, 'applicable state law determines the ... validity of liens on property in the bankruptcy estate.'" *Id.* (citation omitted); *see also Peterson v. Chas. Bender Co. (In re Lifchitz)*, 131 B.R. 827, 832 (Bankr. N.D. Ill. 1991). Because the note and mortgage in this case were executed in Illinois, the question of whether the Bank has a lien upon the Debtors' home for purposes of § 1322(b)(2) must be resolved by reference to Illinois law.

Illinois has two separate statutes dealing with this issue, and they are consistent in providing that a lien is created upon recording of the mortgage. For example, § 5/15-1301 of the Illinois Code states:

> Except as provided in Section 15-1302, *from the time a mortgage is recorded it shall be a lien upon the real estate* that is the subject of the mortgage for all monies advanced or applied or other obligations secured in accordance with the terms of the mortgage or as authorized by law, including the amounts specified in a judgment of foreclosure in accordance with subsection (d) of Section 15-1603.

735 Ill. Comp. Stat. 5/15-1301 (emphasis supplied). Similarly, § 5/30 of the Illinois Code provides:

5

> *All* deeds, *mortgages* and other instruments of writing which are authorized to be recorded, *shall take effect and be in force from and after the time of filing the same for record, and not before*, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record.

765 Ill. Comp. Stat. 5/30 (emphasis added).

Under Illinois law, a mortgage must therefore be recorded before a lien arises in the debtor's property that will be effective as to all creditors and subsequent purchasers. "A mortgage becomes effective when it is recorded. This is a long-standing rule that has been codified in our statutes[.]" *Firstmark Standard Life Ins. Co. v. Superior Bank FSB*, 649 N.E.2d 465, 468 (Ill. App. Ct. 1995). Thus, if a mortgage is not recorded, and does not provide notice to a subsequent transferee, it is ineffective as to that transferee. *Bank of Ill. v. Covey (In re Shara Manning Props., Inc.)*, 475 B.R. 898, 906 (Bankr. C.D. Ill. 2010) ("[A]n instrument that is not properly recorded provides no constructive notice and so is ineffective against a subsequent transferee who does not otherwise have actual or inquiry notice of the instrument or the interest conveyed thereby.").

## IV. DISCUSSION

It is undisputed that the Bank's mortgage was never recorded. Nevertheless, the Bank argues that it has a valid and enforceable lien on the property because a mortgage need not be recorded in order to create a valid and binding lien on the Debtors' interest in the property. The Bank's primary support for this argument[4] is the following dictum from an 1894 Illinois Supreme Court decision, *Haas v. Sternbach*, 156 Ill. 44 (1894):

> "We are aware of no principle, outside of self-interest and prudence in business, that requires the holder of a mortgage to put it on record at any particular

---

[4] Bank of America, N.A.'s Brief in Support of its Objection to Confirmation, at 3.

6

time. By not doing so promptly, he runs the risk of having it postponed to junior liens, and even of losing the benefit of it altogether. As to subsequent purchasers and creditors without notice, such securities take effect from the time of filing for record only." The correctness of this statement of the law in view of our statute cannot be seriously questioned. *No one will contend that the recording of a mortgage is, in this state, necessary to its validity. Recording such instruments serves but one purpose, and that is to make them valid as against creditors and subsequent purchasers without notice.* Section 31, c. 30, Rev. St. provides that they shall take effect as to such persons from the time of filing for record, and not before. No time is fixed within which the filing for record must take place in order to give such an instrument validity.

*Id.* at 54 (quoting *Field v. Ridgeley*, 116 Ill. 424, 431 (1886)).

The Court has no quarrel with the observations that the Supreme Court made in *Haas* regarding the validity of an unrecorded mortgage against both the mortgagor and subsequent creditors with actual notice of its existence. Indeed, that is precisely what current Illinois statutory law provides in 765 Ill. Comp. Stat. 5/30. However, the Court disagrees that *Haas* supports the Bank's argument that its unrecorded mortgage is "a claim secured only by a security interest in real property that is the debtor's principal residence" that may not be modified in a Chapter 13 plan that includes payments to subsequent unsecured creditors with no notice of the Bank's unrecorded mortgage.

The primary issue decided in *Haas* was one of priority as among competing creditors in the mortgaged real estate; specifically, whether an agreement between a mortgagee and a mortgagor not to record the mortgage for a period of time was fraudulent either in fact or in law as to the subsequent creditors of the mortgagor.

As to the first of these issues, the *Haas* court held that the parties' agreement not to record the mortgage was not fraudulent in fact against subsequent creditors of the mortgagor because there was no proof that the mortgagor and mortgagee intended to defraud the

7

mortgagor's subsequent creditors when they agreed not to record the mortgage. Had those creditors proven fraudulent intent, the result would have been different:

> Certainly the fact that a promise is made not to record an instrument properly admissible to record, whereby it becomes constructive notice of its existence, is a fact strongly tending to prove a fraudulent intent, and in some cases has been held sufficient of itself to defeat or postpone the instrument to subsequent conveyances or liens.

*Id.*

In further holding that the parties' agreement not to record the mortgage was not fraudulent at law the *Haas* court relied upon an Illinois statute requiring mortgages to be recorded to be effective against subsequent creditors without actual notice of the mortgage. That statute, Ill. Rev. Stat. § 31 c. 30, was enacted in 1871 and remains in effect without change at 765 Ill. Comp. Stat. § 5/30. The *Haas* court reasoned that the agreement between the borrower and the lender not to record the mortgage did not amount to fraud in law because the unrecorded mortgage, having been automatically rendered void as a matter of law against subsequent creditors without notice by this statute, could not adversely affect the rights of those creditors:

> To our minds, there is much less reason, in view of our decision in *Field v. Ridgely*, 116 Ill. 424, 6 N.E. 156, for holding that mortgage fraudulent in law. In the case cited one of the acts of fraud relied upon by the appellants was the failure of the appellees to put their mortgage on record, and in passing upon the question so raised we said: "We are aware of no principle, outside of self-interest and prudence in business, that requires the holder of a mortgage to put it on record at any particular time. By not doing so promptly, he runs the risk of having it postponed to junior liens, and even of losing the benefit of it altogether. *As to subsequent purchasers and creditors without notice, such securities take effect from the time of filing for record only.*" The correctness of this statement of the law in view of our statute cannot be seriously questioned. No one will contend that the recording of a mortgage is, in this state, necessary to its validity. Recording such instruments serves but one purpose, and that is to make them valid as against creditors and subsequent purchasers without notice.

8

> Section 31, c. 30, Rev. St. provides that they shall take effect as to such persons from the time of filing for record, and not before. No time is fixed within which the filing for record must take place in order to give such an instrument validity. It cannot, therefore, be said that the mere omission to record is fraudulent per se as to subsequent creditors of or purchasers from the mortgagor.

*Id.* (emphasis added).

In the particular facts presented in *Haas*, the other creditors were found to have received actual notice of the unrecorded mortgage, and therefore the unrecorded mortgage was held not to be fraudulent in law as to them. However, the court made clear that, had those creditors not had actual notice of the unrecorded mortgage, it would have been ineffective as to them by reason of the Illinois statute then in effect and still in effect today:

> On the finding of the circuit court that the mortgage of the complainants was fraudulent in law as to subsequent creditors of the mortgagor, its decree giving preference to so much of the debts secured by junior liens as were contracted after that mortgage was executed, but postponing them as to so much thereof as existed at that time, was perfectly consistent and in conformity with the law. If that mortgage was void in law because of the agreement to withhold it from record, it was only so as to debts of the mortgagor contracted after it was made, but to that extent its invalidity in no way depended upon the absence of notice of its existence. The appellate court, however, having reversed the finding of that court as to its being fraudulent in law, and affirming its finding that it was not fraudulent in fact, in both of which conclusions we concur, the question between the parties as to the priority of their respective liens is resolved into one of notice; that is, if the senior mortgage was neither fraudulent in law or in fact, it must be treated like any other unrecorded mortgage, and be given priority over all subsequent liens taken with notice of its existence, *but postponed as to all others.*

*Id.* at 55 (emphasis added).

Under *Haas* and Illinois statutory law, therefore, it would be improper to permit an unrecorded Illinois mortgage to take priority over subsequent creditors without notice of the mortgage. Upholding the Bank's argument in this case would require the Debtors to treat the

9

Bank's unrecorded mortgage as an unmodifiable secured claim in their plan, with priority over those unsecured creditors who lacked actual notice of the unrecorded mortgage. To mandate such favored treatment for the Bank over creditors who extended credit to the Debtors without actual notice of the Bank's mortgage would result in the same violation of the Illinois statutes condemned by *Haas*. In short, far from supporting the Bank's position, *Haas* undermines it.

A more recent decision of the Illinois appellate court, *Farmers State Bank v. Neese*, 665 N.E.2d 534 (Ill. App. Ct. 1996), confirms even more directly than *Haas* that a lien on real estate does not even arise until the mortgage has been recorded:[5]

> Under section 15-1107(c) of the Foreclosure Law, the bank's interest is "deemed a mortgage." Under section 15-1301 of the Foreclosure Law, with certain exception inapplicable here, a mortgage is a lien only "from the time [it] is recorded. *Thus the bank did not even have a lien at the time the IRS filed notice, and so could not have had priority over the tax lien."*

*Id.* at 537-38 (citations omitted) (emphasis supplied).

This interpretation of Illinois law is consistent with the principles and provisions of the Bankruptcy Code. For example, the Code's use of the phrase "charge against or interest in property" in the definition of "lien" implies that the claim referred to in § 1322(b)(2) must be an *in rem* claim, rather than an *in personam* claim. 11 U.S.C. § 101(37). Indeed, the Bank appears to concede as much when it claims in its brief that its "mortgage lien is a right in and to property – the debtors' residence – and accordingly this right is *in rem*."[6] However, if § 1322(b)(2)'s requirement that the Bank have a "lien" requires possession of an *in rem* right, then that lien

---

[5] The Bank argues that *Neese* does not apply because the court there was interpreting a statute that applies only to mortgage foreclosure cases. However, both the statute relied upon in the *Neese* decision and the statute relied upon in the *Haas* decision are consistent in their declarations that an unrecorded mortgage is completely ineffective against subsequent creditors without notice. The statute discussed in *Neese* makes clearer that it is ineffective because it does not even create a lien upon the real estate until it has been recorded. In any event, because the creditor's ultimate protection is a mortgage foreclosure proceeding, the Court rejects the Bank's argument that the statute interpreted in the *Neese* case is not relevant on the ground that it applies only to mortgage foreclosure proceedings.

[6] Bank of America, N.A.'s Brief in Opposition to the Debtors' Objection to Bank of America's Claim, at 6.

must be good against the world,[7] including subsequent creditors without actual notice of the lien. For the reasons previously discussed, that is obviously not the case with respect to unrecorded Illinois mortgages.

In addition, accepting the Bank's arguments would run afoul of the best-interests-of-creditors test set forth in 11 U.S.C. § 1325(a)(4). Under that section, a confirmable Chapter 13 plan must provide for payments to general unsecured creditors that at least equal the distribution they would receive in a Chapter 7 liquidation. In a hypothetical Chapter 7, the Bank's unrecorded but allegedly "secured" claim could easily be avoided by a Chapter 7 trustee based solely upon the Bank's failure to record its mortgage.[8] Avoidance of the lien would typically increase the amount available for distribution to unsecured Chapter 7 creditors above the amount that would be available to those same creditors under a Chapter 13 plan.

Under these circumstances, accepting the Bank's argument would make it legally and logically impossible for the Debtors, under the circumstances of this case, ever to propose a confirmable plan. That is, the Debtors could not simultaneously propose a plan that both (a) treated the Bank as a holder of an unmodifiable secured claim under § 1322(b)(2), and (b) provided the unsecured creditors of the estate with at least the payout they would receive in a Chapter 7 liquidation under § 1325(a)(4). The Court must construe the Code in a manner that reconciles its different provisions. *See, e.g., In re Butcher*, 459 B.R. 115, 125-26 (Bankr. D.

---

[7] *See, e.g., Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958).

[8] The Bank argues strenuously that the Court's analysis of its secured claim must be different in a Chapter 13 case than it would be in other types of cases because Chapter 13 debtors, unlike Chapter 11 debtors or Chapter 7 trustees, do not possess avoiding powers. *See Crawley v. Aurora Loan Servs. (In re Crawley)*, 318 B.R. 512, 515-16 (Bankr. W.D. Wis. 2004); *In re Steck*, 298 B.R. 244, 247-48 (Bankr. D. N.J. 2003). The Bank's argument misses the point, however, because Chapter 13 debtors must still satisfy the best-interests-of-creditors test, and that test requires the Court to undertake a hypothetical Chapter 7 liquidation analysis to determine whether unsecured creditors under the Chapter 13 plan are being treated worse than they would be under a straight Chapter 7 liquidation. And, as the Bank concedes, Chapter 7 trustees do possess avoiding powers. The Bank's argument is also based upon an assumption that is not free from doubt, for several courts have held that Chapter 13 debtors do possess avoiding powers. *See United States v. Dewes*, 315 B.R. 834, 836-37 (N.D. Ind. 2004); *Einoder v. Mount Greenwood Bank (In re Einoder)*, 55 B.R. 319, 322 (Bankr. N.D. Ill. 1985).

Colo. 2011); *In re Tel-Central Commc'ns, Inc.*, 212 B.R. 342, 349 (Bankr. W.D. Mo. 1997). Accepting the Bank's argument would prevent the Court from reconciling §§ 1322 and 1325.

For all of these reasons, the Court concludes that the Bank's failure to record its mortgage means, as a matter of Illinois law, that the Bank does not have a "a claim secured only by a security interest in real property that is the debtor's principal residence" for purposes of § 1322(b)(2),[9] because the Plan includes payments to subsequent creditors who extended credit to the Debtor without actual notice of the mortgage.[10]

However, the Court also rejects the Debtors' argument that the Bank's claim must be disallowed for its failure to file an unsecured claim. The Bank filed Claim No. 13-1 and Claim No. 13-2 as secured claims within the time allowed for filing proofs of claims. Under Federal Rule of Civil Procedure 15(a)(2), made applicable by Federal Rule of Bankruptcy Procedure 7015, the court shall "freely give leave [to amend] when justice so requires," and under Rule 15(c)(1)(B), an amendment relates back to the date of filing the original claim if the claim is "sufficiently linked" to the original. *In re Marchfirst, Inc.*, 448 B.R. 499, 508 (Bankr. N.D. Ill. 2011) (quoting *Disch v. Rasmussen*, 417 F.3d 769, 776 (7th Cir. 2005)). The Court finds that justice requires granting leave to the Bank to amend its previously-filed Claim No. 13-1 and Claim No. 13-2, and holds that the Bank's claim is allowed as an unsecured claim in the amount of $200,318.65.

---

[9] For the same reasons, the Court rejects the Bank's argument that the Supreme Court's decision in *Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993) requires that the Bank's mortgage be protected from modification under § 1322(b)(2). In *Nobelman*, there was apparently no question raised about the enforceability of the bank's mortgage as to all creditors under applicable state law, and the only question was whether the lien could be bifurcated under 11 U.S.C. § 506(a) into secured and unsecured portions. By contrast, in this case, the Bank's unrecorded mortgage was never enforceable against an entire class of creditors – those who extended credit after the execution of the mortgage without actual knowledge of the mortgage.

[10] The Debtors claim that the unsecured creditors had no notice of the Bank's mortgage at the time that they extended credit to the Debtors. (Debtors' Brief in Opposition to Bank of America's Objection to Confirmation, at 3.) The Bank has not challenged this assertion either in its brief or at oral argument.

## V. CONCLUSION

For all of the foregoing reasons, the Court sustains the Debtors' objection to the Bank's secured claim and finds that the Bank has an allowed unsecured claim in the amount of $200,318.65.

ENTERED:

DATE: 11-28-12

_____
Donald R. Cassling
United States Bankruptcy Judge